IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

L. FOSTER CONSULTING, LLC,                )
                                          )
    Plaintiff and Counterclaim Defendant, )
                                          )
    v.                                    )      CIVIL NO. 3:11cv800-REP
                                          )
XL GROUP, INC.,                           )
                                          )
    Defendant and Counterclaim Plaintiff. )
_____      )

## REPORT AND RECOMMENDATION

After a series of negotiations, L. Foster Consulting, LLC ("Foster Consulting" or the "Plaintiff") and XL Group, Inc. ("XL Group" or the "Defendant") formed a joint venture to sell compliance services to the pharmaceutical industry. To that end, XL Group developed software that incorporated advice and guidance provided by Foster Consulting. Unhappy with XL Group's performance, Foster Consulting terminated the agreement after approximately nine months. Foster Consulting now sues XL Group, seeking monetary damages and declaratory relief principally based on its claim to a copyright in the software. XL Group counterclaims, alleging that Foster Consulting has not paid its share of losses under the joint venture agreement and seeking a declaratory judgment that it owns the software copyright.

The matter is now before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the parties' respective motions to dismiss (ECF Nos. 47, 52). Because the parties have filed their motions to dismiss contemporaneously with their answers, the Court will treat the motions as seeking judgment on the pleadings pursuant to Rule 12(c), rather than as

motions to dismiss pursuant to Rule 12(b)(6).[1] *See Walter v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). Construed in this fashion, and for the reasons set forth herein, it is the Court's recommendation that the Defendant's Motion be GRANTED, in part, and DENIED, in part, and that the Plaintiff's Motion be DENIED. Specifically, the Defendant's motion should be DENIED with respect to Counts I and II and GRANTED with respect to Counts III and IV. Plaintiff's motion should be DENIED entirely.

## I. BACKGROUND

The Court construes the allegations in the favor of the non-moving party, as required when resolving a motion for judgment on the pleadings. Fed. R. Civ. P. 12(c); *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 591 (4th Cir. 2004) (citations omitted). Viewing the facts through such a lens, the Court has concluded that the facts are as follows.

Foster Consulting provides clients in the pharmaceutical industry with compliance policies, procedures, training, audits and reviews to ensure that their prescription drug sample programs comply with applicable regulations. (2d Am. Compl. at ¶ 5.) In early 2009, XL Group approached Foster Consulting about forming a joint venture to develop, market, and service an automated compliance system within Foster Consulting's area of expertise. (*Id.* at ¶ 9.) XL Group is a custom software firm with little expertise in the area of pharmaceutical compliance. (*Id.* at ¶¶ 6-8.) Immediately upon commencement of negotiations, Foster Consulting began work on the proposed project, providing XL Group with form templates, system triggers, regulatory requirements and standard operating procedures — all of which would be incorporated into the software. (*Id.* at ¶ 11.)

---

[1] As the Court shall explain, *infra* at Section II, the standard of review governing a motion made pursuant to Rule 12(c) is identical to the standard governing a motion under Rule 12(b)(6). The sole difference is that the Court may consider all pleadings, including answers, instead of simply reviewing the complaint.

Negotiations continued for some time with proposals exchanged in March and June 2009. (*Id.* at ¶¶ 12-13.) For approximately four months, Foster Consulting provided services in furtherance of the joint venture without the protection of a written contract. (*Id.* at ¶¶ 14, 16.) Eventually, it threatened to abandon the project unless XL Group executed a written agreement. (*Id.* at ¶ 14.) Accordingly, XL Group sent a proposed joint venture agreement (the "Agreement") to Foster Consulting, which it signed and returned to XL Group's headquarters in Pennsylvania. XL Group then executed the Agreement in Pennsylvania. (*Id.* at Ex. 1.)[2]

Under the Agreement, the parties "form[ed] a joint venture solely to develop and sell sample management services to the pharmaceutical industry" with each owning a fifty percent stake. (*Id.*) The Agreement described the parties' respective areas of expertise, specifically indicating that XL Group "has software development capabilities, service and facilities necessary to execute the proposed service offering." (*Id.*) They named the joint venture "ClaritySM" — the same name ultimately given to the software at issue in this case (the "ClaritySM Software"). (*Id.* at ¶ 17, Ex. 1.)

The Agreement imposed specific duties on the parties, requiring each to track their respective contributions; maintain income received by the joint venture in a mutually agreeable manner; jointly maintain a ledger of all income and expenses; and, to "work diligently and with integrity for the benefit of the joint venture." (*Id.*) But, either party was permitted to unilaterally "terminate the agreement, and end the joint venture, at any time and for any reason, by informing

---

[2] The order and location in which the Agreement was signed are significant, because Virginia applies the law of the state where the contract was formed when interpreting and determining its validity. *Dreher v. Budget Rent-A-Car Sys., Inc.*, 634 S.E.2d 324, 327 (Va. 2006) (citations omitted). As a federal court exercising pendent jurisdiction over state law claims, the Court must apply Virginia's choice of law rules. *Felder v. Casey*, 487 U.S. 131, 151 (1988) (citing *Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945)). Under Virginia law, the law of Pennsylvania governs interpretation and enforceability of the Agreement, since the final signature was affixed therein. *Dreher*, 634 S.E.2d at 327.

3

the other party in writing." (*Id.*)  Such a termination triggered additional duties to conduct "a

final accounting of income, expenses, profits and losses" and that any "resulting profit or loss

shall be promptly paid in accordance with the percentage of ownership at the time of

termination." (*Id.*)  Future profits or losses would also be shared equally, but only to the extent

that such were the "direct result of work completed prior to the date of termination." (*Id.*)

Unlike profits and losses, separately owned assets would not be shared upon termination.

Specifically, the Agreement provided as follows:

> XL and Foster agree that upon termination of the joint venture for any reason, all
> proprietary, privileged or otherwise personal information, documents, *computer
> programs*, *copyrights*, patents, and all other business related items, belonging
> solely to one party shall remain the property of said party, and shall not be
> considered with regard to the final accounting and division of joint venture profits
> or losses.

(*Id.* (emphasis added).)

Subsequently, the parties finalized the ClaritySM Software as a "customizable web-based

[pharmaceutical] sample management program" with "the ability to forecast, apportion, track,

reconcile and create reports" for putative clients. (*Id.* at ¶ 17.)  On at least two occasions, XL

Group entered into "pharmaceutical management services contract[s]" on behalf of the joint

venture. (*Id.* at ¶¶ 18-19.)  However, XL Group's conduct caused delays performing both of

these service contracts, ultimately leading to concern on Foster Consulting's part. (*Id.* at ¶¶ 18,

20.)  More specifically, Foster Consulting was worried that its established reputation in the

pharmaceutical industry would suffer from such delays. (*Id.*)  Although it had spent considerable

time and resources on the joint venture, Foster Consulting terminated the Agreement on July 21,

2010. (*Id.* at ¶¶ 22-23.)

4

Leading up to termination of the joint venture, XL Group committed two acts that raised additional concerns with Foster Consulting.  First, XL Group applied to register "ClaritySM" as its own trademark with the United States Patent and Trademark Office, identifying itself as the sole registrant — excluding the joint venture and Foster Consulting from the application.  (*Id.* at ¶ 21.)  Also, XL Group created and disseminated marketing materials listing it as the sole creator of the ClaritySM Software.  (*Id.*)  In fact, it continues to market the ClaritySM Software in this way, neglecting to attribute its development to the joint venture or Foster Consulting.  (*Id.*)

Once Foster Consulting terminated the joint venture, it demanded that XL Group comply with the post-termination provisions of the Agreement.  (*Id.* at ¶ 24.)  Although XL Group provided two separate accountings, neither was accurate or compliant with proper accounting principles.  (*Id.* at ¶ 24; Answer to Am. Countercl. at ¶¶ 19, 20.)[3]  It also refused to value any joint venture assets (including the ClaritySM Software), pay any past and future income, or provide the source code for the ClaritySM Software.  (2d Am. Compl. at ¶ 24.)

Due to this series of events, Foster Consulting brought this action seeking a declaratory judgment that it owns half of the copyright in the ClaritySM Software and asserting claims for breach of contract, breach of fiduciary duty and fraud.  (2d Am. Compl. ¶¶ 26-52.)  In response, XL Group has moved to dismiss all of Foster Consulting's claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  XL Group has also counterclaimed, seeking its own declaratory judgment that it is the sole owner of the ClaritySM Software and alleging breach of contract for

---

[3] According to XL Group, Foster Consulting's admission that two accountings were undertaken cannot be reconciled with its breach of contract claim.  (XL Group's Mem. Sup. Mot. to Dismiss ("XL Group's Mem.") at 21.)  However, in deciding XL Group's motion, the Court must construe the facts in Foster Consulting's favor.  *See T.G. Slater & Son, Inc. v. The Donald P. and Patricia A. Brennan, LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citation omitted).  To that end, the admission and allegation may be construed to allege that no *sufficient* accounting was ever performed.

failure to pay an equal share of the joint venture's losses. (Am. Countercl. ¶¶ 22-34.) Foster Consulting moves to dismiss XL Group's breach of contract counterclaim. As explained above and required by *Walter*, 589 F.3d at 139, the Court shall construe the motions as seeking judgment on the pleadings under Rule 12(c).

## II. STANDARD OF REVIEW

A motion for judgment on the pleadings made pursuant to Rule 12(c) is decided under the same standard as a motion to dismiss made pursuant to Rule 12(b)(6) with the sole difference being that the Court is to consider the answer in addition to the complaint. *Walker*, 589 F.3d at 139. "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* (citation omitted), to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* In considering such a motion, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the

plaintiff. *T.G. Slater*, 385 F.3d at 841 (citation omitted). Legal conclusions enjoy no such

deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. DISCUSSION

Two general choice of law rules guide the analysis of the several claims and

counterclaims asserted in this case. First, because the critical asset in dispute is a software

copyright, analysis must begin with federal copyright law. Under the Copyright Act of 1976,

ownership "vests initially in the author or authors of the work." 17 U.S.C. § 201(a); *see also*

*Golan v. Holder*, __ U.S. __, 132 S. Ct. 873, 892 (2012). Second, state law applies to any state

law claims involving breach of the Agreement, regardless of whether a copyright is involved.

*Gibraltar, P.R., Inc. v. Otoki Group*, 104 F.3d 616, 619 (4th Cir. 1997) (citation omitted)

("[O]wnership does not properly fall under federal law just because the property is a federally-

created interest like . . . a copyright"). With these rules in mind, the analysis begins with XL

Group's motion challenging the sufficiency of Foster Consulting's Second Amended Complaint.

### A.    Foster Consulting's Complaint

Foster Consulting asserts four counts against XL Group. First, Count I seeks a

declaratory judgment that both members of the joint venture are entitled to half ownership of the

ClaritySM Software copyright. This claim is governed by the federal Copyright Act, 17 U.S.C.

§§ 101-1332. Counts II through IV assert breach of contract, fraud, and breach of fiduciary duty

— all of which are governed by state law. Each count will be addressed in turn.

#### 1.    Declaratory Judgment (Count I)

Although both parties assert claims for money damages, the central dispute here involves

ownership of the ClaritySM Software copyright. Foster Consulting seeks a declaratory judgment

7

that it owns fifty percent of the copyright; XL Group counters that it owns one hundred percent of the copyright. Analysis therefore begins with the origination of the copyright pursuant to the Copyright Act of 1976, 17 U.S.C. §§ 101-1332.

"Rights typically vest at the *outset* of copyright protection, in an author or rightholder." *Golan*, 132 S. Ct. at 892 (emphasis in the original) (citing 17 U.S.C. § 201(a)); *see also Avtec Sys., Inc. v. Peiffer*, 21 F.3d 568, 571 (4th Cir. 1994) ("[Copy]rights presumptively vest in the author"). The Act provides three types of authorship: (1) individual authorship; (2) joint authorship; and, (3) works made for hire, in which case the employer is considered the author. 17 U.S.C. § 201(a)-(b). Once a copyrighted work is created, the author may transfer ownership to another, who then acquires the benefits of copyright protection. 17 U.S.C. § 201(d); *see also Davis v. Meridian Films, Inc.*, 14 Fed. App'x 178, 182 (4th Cir. 2001).

Here, Foster Consulting asserts a claim to copyright authorship under two alternative theories: (1) work for hire by the joint venture; or (2) joint authorship.[4] The pleadings are sufficient on both claims.[5]

### a.     Work for Hire

To establish authorship under the "work-for-hire" rule, an employer must show that the work was "prepared by an employee within the scope of his or her employment." *Avtec Sys.*, 21

---

[4] Foster Consulting relies on William F. Patry, *Copyright Law & Practice*, § 5:12 (2012), for the bright-line proposition that copyright of any works created during the joint venture automatically vest in the joint venture. This is somewhat of an oversimplification, as Patry recognized that it is "more accurately, its *employees*" who author the work. *Id.* (emphasis added). Thus, the rule is more accurately stated that a joint venture may obtain copyright under the work for hire doctrine in the same way that any employer can. It is in this vein that Foster Consulting's pleadings are analyzed.

[5] XL Group discusses the issue of assignment of the copyright at some length, but Foster Consulting has neither alleged the existence of an assignment, nor argued the point in its briefs. (*See* 2d Am. Compl. at ¶¶ 11, 26-33; Pl.'s Mem. Opp'n Mot. to Dismiss ("Pl.'s Mem.") at 2-10.) Thus, no analysis of the transfer issue is necessary.

F.3d at 571 (citation and internal quotation marks omitted). It will not usually be difficult to ascertain whether a person was "employed," and so disputes usually focus on the scope of employment. Common law agency governs the scope of employment question. *Id.* (citing *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 739-40 (1989)). Thus, an employee's copyrightable work is "within the scope of employment 'only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; and, (c) it is actuated, at least in part, by a purpose to serve the master.'" *Id.* (quoting *Restatement (Second) of Agency* § 228 (1958)).[6]

Liberally construed in Foster Consulting's Favor, the Second Amended Complaint sufficiently alleges a work for hire. Regardless of whether the ClaritySM Software code was written by XL Group's employees, it is alleged that it was written within the scope of the joint venture by an employee hired for the purpose of writing software code in furtherance of the pharmaceutical services. (2d Am. Compl. at ¶¶ 9, 16-17.) Also according to the allegations, the Software was completed during the existence of the joint venture. (*Id.* at ¶ 17.) Moreover, it may be reasonably inferred that the ClaritySM Software was created to serve the purposes of the joint venture — "to develop and sell sample management services to the pharmaceutical industry." (*Id.* Ex. 1.) Thus, the scope requirement has been satisfied. The Court therefore

---

[6] In a subsequent, unpublished opinion arising out of the *Avtec* litigation, the Fourth Circuit clarified that the burden is on an employer to establish authorship under the "work-for-hire" rule. *Avtec Sys., Inc. v. Peiffer*, No. 94-2364, 1995 U.S. App. LEXIS 25901, at *9 (4th Cir. Sept. 13, 1995) (citing *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989)). Because this matter is before the Court on a motion for judgment on the pleadings, Foster Consulting need not meet any burden of proof. *See T.G. Slater*, 385 F.3d at 841 (citation omitted). But as a matter of pleading, it is incumbent upon the employer to allege facts showing that a copyrighted work is a work for hire, as opposed to requiring the employee to allege otherwise.

recommends that XL Group's motion for judgment on the pleadings be denied with respect to Count I.

### b.   Ownership of Copyright by Joint Authorship

As an alternative theory of copyright ownership, Foster Consulting alleges that it obtained rights to the ClaritySM Software as a joint author.  The Copyright Act defines a "joint work" as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101.  A work must therefore contain two elements to constitute a joint work: (1) intent to create a single work; and, (2) contributions by each putative joint author.

The Second Amended Complaint contains ample allegations of the parties' intentions. For example, the Agreement specifically includes a statement of intent "to develop and sell sample management services." (2d Am. Compl. Ex. 1.)  Moreover, the parties agreed that they would "join together and create ClaritySM" — presumably referring to the Software, not the joint venture bearing the same name. (*Id.* at ¶ 10.)  Ultimately, Foster Consulting may not be able to prove that XL Group intended joint authorship of the ClaritySM Software; however, assuming the truth of the facts alleged, the Court can infer such intent — an inference which this Court *must* make in favor of Foster Consulting. *T.G. Slater*, 385 F.3d at 841 (citation omitted).[7]

At first glance, Foster Consulting appears to easily satisfy the second element by listing four tangible contributions, while noting the existence of other unidentified contributions. (2d

---

[7] One other allegation of intent worth noting involves XL Group's listing of expenses associated with the ClaritySM Software in the joint venture's final accounting. (Pl.'s Opp'n at 11.) This allegation may support the intent element, which the Court has already found satisfied. However, it has no bearing on the nature of Foster Consulting's contributions as an author, which implicates the second element of a joint authorship claim. More appropriately, this allegation addresses the accuracy of the final accounting, which is material to Foster Consulting's breach of contract claim. *See* Section III(A)(2), *infra*.

Am. Compl. at ¶ 11.)  But to satisfy the second element, the Second, Seventh and Ninth Circuits

also require that the "contributions" of each author be independently copyrightable.

*Aalmuhammed v. Lee*, 202 F.3d 1227, 1231 (9th Cir. 2000) (citation and internal quotation marks

omitted) ("[E]ach author [must] make an independently copyrightable contribution"); *Erickson v.*

*Trinity Theatre, Inc.*, 13 F.3d 1061, 1071 (7th Cir. 1994) ("[T]he language of the Act supports

the adoption of a copyrightability requirement"); *Childress v. Taylor*, 945 F.2d 500, 507 (2d. Cir.

1991) ("[A]ll joint authors [must] make copyrightable contributions").

      Relying on the decision in *Brown v. Flowers*, 297 F. Supp. 2d 846 (M.D.N.C. 2003)

(*Brown I*), *aff'd* 196 Fed. App'x 178 (4th Cir. 2006) (*Brown II*), XL Group asserts that the

Fourth Circuit has also adopted this "copyrightability" requirement.  (Def.'s Mem. Sup. Mot. to

Dismiss ("Def.'s Mem.") at 10.)  This is a bit of an overstatement, because the District Court in

that case specifically held that the pleadings fell far short of any standard.  *Brown I*, 297 F. Supp.

2d at 852 ("Regardless of the test employed, courts agree that a party must make some original

contribution, one which is more than *de minimus*") (citation omitted).  Although the Fourth

Circuit's decision is consistent with the "copyrightability" requirement, it did not explicitly

address the issue.  *Brown II*, 196 Fed. App'x at 181.

      An alternative standard was also offered by Judge Gregory's well-reasoned dissent in

*Brown II.*  Relying on the Seventh Circuit's decision in *Gaiman v. McFarlane*, 360 F.3d 644,

659 (7th Cir. 2004) (Posner, J.), Judge Gregory would find joint authorship if each author makes

"a substantial original contribution to a copyrightable work."  *Brown II*, 196 Fed. App'x at 189

(Gregory, J., dissenting).  This standard recognizes the exception to copyrightability where

neither joint author's contribution is copyrightable standing alone, but the works taken as a whole render the final product copyrightable. *Id.* at 188 (citing *Gaiman*, 360 F.3d at 660).

Here, the Court does not need to speculate about which standard the Fourth Circuit will ultimately adopt, because application of either standard yields the same result in this case. The Court therefore applies both tests to the Second Amended Complaint, thus adhering to "the 'cardinal principal of judicial restraint,' that 'if it is not necessary to decide more, it is necessary not to decide more.'" *Goodman v. Praxair, Inc.*, 494 F.3d 458, 476 (4th Cir. 2007) (*en banc*) (Williams, C.J., concurring in part) (quoting *PDK Labs., Inc. v. Drug Enforcement Admin.*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment)).

### i.   Copyrightability

Foster Consulting has alleged sufficient facts — taken as true and viewed in its favor — to show that it could prove its contributions to be copyrightable. Copyright protection exists only for "original works of authorship fixed in any tangible medium of expression." *Universal Furniture Intern., Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 428 (4th Cir. 2010) (citing 17 U.S.C. § 102(a)). "In no case does copyright protect[] . . . any idea, procedure, process, system, method of operation, concept, principle, or discovery . . . described, explained, illustrated, or embodied in [the copyrighted] work." 17 U.S.C. § 102(b); *Golan*, 132 S. Ct. at 890. As a corollary, "'every idea, theory, and fact in a copyrighted work becomes instantly available for public exploitation at the moment of publication'; the author's expression alone gains copyright protection." *Golan*, 132 S. Ct. at 890 (quoting *Eldred v. Ashcroft*, 537 U.S. 186, 219 (2003)).

The limitation that mere ideas cannot enjoy copyright protection reflects the reality that ideas might not always meet the "originality" or "tangible medium of expression" requirements of the Act. One might formulate an original idea, but never write it down. Or, one might write the idea, but as it turns out, it is not original. Only if all of the elements of § 102(a) are satisfied can a work enjoy copyright protection.

Here, the Complaint lists four specific contributions to the ClaritySM Software: (1) form templates; (2) system triggers; (3) regulatory requirements; and, (4) standard operating procedures.[8] XL Group is correct that neither regulatory requirements, nor standard operating procedures may enjoy copyright protection. The Copyright Act provides an explicit prohibition on copyright of "any work of the United States Government." 17 U.S.C. § 105. Thus, government regulations do not meet the copyrightability requirement. Also, standard operating procedures fall within § 102(b)'s prohibition on "procedure[s], process[es], system[s], method[s] of operation, concept[s], [or] principle[s]."

"Form templates" and "system triggers" are a different matter. It is possible that, after evidence is developed, these contributions may also fall within the prohibitions set forth at § 102(b). But at this early stage in the litigation, it is also plausible that such contributions meet both the originality and "tangible medium of expression" requirements of the Act. XL Group points to the seminal case of *Baker v. Selden*, 101 U.S. 99 (1880), for a bright-line rule that "form templates" may never enjoy copyright protection. (Def.'s Rebuttal Mem. Sup. Mot. to Dismiss ("Def.'s Rebuttal") at 5.) Such a rule overstates the holding of *Baker*.

---

[8] The Court notes that the allegation specifically indicates that Foster Consulting's contributions "were not limited to" the four listed items. (2d Am. Compl. at ¶ 11.) Such open-ended allegations of "contributions" are exactly the sort of conclusory statements that *Twombly* and *Iqbal* refuse to accept as true. *See Iqbal*, 556 U.S. at 678. Thus, the Court considers the reference to "other" contributions to be of no import here.

13

In *Baker*, an author of a book on accounting principles sued another for copying forms used to implement the accounting systems described in the book. 101 U.S. at 104. As the Court explained:

> In describing the art, the illustrations and diagrams employed happen to correspond more closely than usual with the actual work performed by the operator who uses the art. Those illustrations and diagrams consist of ruled lines and headings of accounts; and it is similar *ruled lines and headings* of accounts which, in the application of the art, the book-keeper makes with his pen, or the stationer with his press; whilst in most other cases the diagrams and illustrations can only be represented in concrete forms of wood, metal, stone, or some other physical embodiment. *But the principle is the same in all.* The description of the art in a book, though entitled to the benefit of copyright, lays no foundation for an exclusive claim to the art itself. The object of the one is explanation; the object of the other is use. The former may be secured by copyright. The later can only be secured, if it can be secured at all, by letters-patent.

*Id.* at 104-105 (emphasis added). Thus, the distinction emphasized is that "ruled lines" or "headings" constitute a practice of accounting.

*Baker's* holding does not necessarily mean that a person can never design a "form template" in another context (such as software design) that contains an expression of original ideas. In other words, the Court cannot say for certain that Foster Consulting's "form templates" are akin to the accounting forms in *Baker* until the content of those forms is itself before the Court. Because the forms in *Baker* were explicitly adopted from the accounting principles in a book, it was clearly established that no original ideas were contained therein. The same cannot necessarily be said regarding the "form templates" here without speculating as to their content. That is not the proper inquiry on a Rule 12(c) motion (or a Rule 12(b)(6) motion), where the Court must merely assume the veracity of the allegations and draw all inferences in favor of non-moving party. *See T.G. Slater*, 385 F.3d at 841.

The same is true of system triggers.[9] XL Group relies on *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991), to establish that "facts . . . are not the proper subject of copyright." (Def.'s Rebuttal at 5.) While this statement of the law is accurate, it cannot necessarily be said that Foster Consulting's "system triggers" were mere facts. The Supreme Court's holding in *Feist* relied on the notion that "[n]o one may claim originality as to facts." *Feist*, 499 U.S. at 347 (citation and internal quotation marks omitted). Drawing all reasonable inferences in Foster Consulting's favor, as it is required to do, *T.G. Slater*, 385 F.3d at 841, it is possible that the particular, written system triggers offered by Foster Consulting contain some element of originality. Until evidence of Foster Consulting's "system triggers" is before the Court, it cannot be determined whether they satisfy the "originality" requirement.

In sum, at least two of Foster Consulting's specifically alleged contributions may ultimately satisfy the "copyrightability" standard. Thus, assuming that such a standard applies in this jurisdiction, the Court recommends that XL Group's motion for judgment on the pleadings be denied with respect to Count I.

### ii.    Substantial Original Contribution

If the Court were to apply Judge Gregory's proposed "substantial original contribution" standard, it would reach the same result. This standard derives from the exception applied by the Seventh Circuit in *Gaiman*, 360 F.3d at 658-59, where neither author's contribution is separately copyrightable, but together the contributions make a copyrightable whole. Judge Posner explained the following example:

---

[9] The Court notes that "systems" are included in the prohibition at 17 U.S.C. § 102(b). However, "system *triggers*" can mean any number of things, and the Court is not in a position to assess whether this phrase refers to a "system," or some sort of written, original formula for triggering some aspect in the ClaritySM Software. At the summary judgment stage, it may become apparent that the prohibition applies, but such a determination is premature.

15

> Here is a typical case from academe. One professor has brilliant ideas but can't write; another is an excellent writer, but his ideas are commonplace. So they collaborate on an academic article, one contributing the ideas, which are not copyrightable, and the other the prose envelope, and . . . they sign as coauthors. . . This is the valid core of Nimmers' heretical suggestion that "if authors A and B work in collaboration, but A's contribution is limited to plot ideas that standing alone would not be copyrightable, and B weaves the ideas into a completed literary expression, it would seem that A and B are joint authors of the resulting work."

*Gaiman*, 360 F.3d at 659 (citation omitted). In this example, A contributes the ideas necessary to render the work "original"; B fashions those ideas into a tangible medium of fixed expression. Without A, B's work would be unoriginal. Without B, A's work would not be expressed. In Judge Posner and Judge Gregory's view, both A and B are joint authors enjoying the protection of copyright law.

Here, the pleadings may be fairly construed to yield the same result. As Foster Consulting has alleged, XL Group had already attempted to write a similar computer program that failed to reflect accurate content. (2d Am. Compl. at ¶ 7.) This situation is akin to Judge Posner's example, where XL Group plays the role of the professor who can write well but has no original ideas, while Foster Consulting is the brilliant professor who is unable to write well. *Gaiman*, 360 F.3d at 659. Reasonably inferring that at least some of Foster Consulting's input constituted an original idea, then it made a "substantial original contribution" to the ClaritySM Software. *Brown II*, 196 Fed. App'x at 189 (Gregory, J., dissenting). Assuming that this standard governs in the Fourth Circuit, the Court would recommend that XL Group's motion for judgment on the pleadings be denied with respect to Count I.

16

### 2.   Breach of Contract (Count II)

Foster Consulting alleges that XL Group committed three separate breaches of the Agreement. First, it alleges that XL Group breached the Agreement by registering the ClaritySM mark in XL Group's own name. (2d Am. Compl. at ¶ 38.)  Second, it asserts a breach resulted when XL Group created marketing materials identifying it as the sole creator of the ClaritySM Software. (*Id.*)  Neither of these first two alleged breaches finds any support within the four corners of the Agreement. Neither the Agreement itself nor the allegations of the Second Amended Complaint demonstrate the existence of any duty with regard to trademarking the materials (or refraining from doing so in one co-adventurer's name). Such registration is a distinct matter from whether the other co-adventurer is entitled to profits made as a result of the trademark — as Foster Consulting may well be.

Indeed, Foster Consulting also alleges a breach of contract for XL Group's failure to provide an accounting and, as a result, share profits and losses. (*Id.* at ¶ 37.)  If such accounting is proven to be inaccurate — or if Foster Consulting proves copyright ownership — it may be able to establish this claim.  Thus, the Court recommends that the motion for judgment on the pleadings as to Count II be granted, in part, and denied, in part.

"[W]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone." *Lesko v. Frankford Hospital-Bucks County*, 11 A.3d 917, 921 (Pa. 2010) (citations omitted).[10]  If the contract is "clear and unambiguous, the focus of interpretation is upon the terms of the agreement as *manifestly expressed*, rather than as, perhaps, silently intended." *Id.* (emphasis in the original) (citation omitted).  Such interpretation is a matter of

---

[10] As already explained, Pennsylvania law governs interpretation of the Agreement. *See* note 2, *supra.*

law for the court to decide. *Id.* (citing *Seven Springs Farm, Inc. v. Croker*, 801 A.2d 1212, 1215 n.1 (Pa. 2002)).

Neither party contends that the Agreement is vague or ambiguous. It contains no explicit prohibition on registration of a trademark or assuming credit for creation of the ClaritySM Software. It is no more a breach of contract for XL Group to take credit for the fruits of the joint venture than it would be for Foster Consulting to do so.[11] The same is true with regard to registration of any ClaritySM trademark — the Agreement did not forbid either co-adventurer from filing in its own name, while the mark itself remains an asset of the joint venture under the Agreement. To the extent that the Second Amended Complaint seeks redress for such acts, the Court recommends that XL Group's motion for judgment on the pleadings be granted.

Nevertheless, Foster Consulting has alleged a breach of contract claim in another respect. Upon termination of the joint venture, the Agreement specifically requires "a final accounting of income, expenses, profits and losses." (2d Am. Compl. Ex. 1.) In conjunction with this post-venture requirement, both parties were required to "accurately" keep an "accounting ledger" throughout the term of the joint venture. (*Id.*) Clearly then, any final accounting was required to reflect the accuracy of the ledgers maintained by the parties. Indeed, if Foster Consulting prevails on Count I, it may be entitled to additional profits from the ClaritySM Software. Although Foster Consulting admits that XL Group provided no fewer than two post-termination accountings, it disputes the accuracy thereof. *See* note 3, *supra*. These allegations of inaccuracy, taken as true, give rise to a breach of contract claim. It also plausibly supports a claim that any existing profits have not been paid, since such profits may not be reflected in a faulty accounting.

---

[11] Although a separate issue from the parties contractual obligations, it should be noted that similar issues of crediting the author may arise in the context of copyright law. *See Gaiman*, 360 F.3d at 653.

Therefore, as to these allegations, the Court recommends that XL Group's motion for judgment on the pleadings be denied.

### 3.    Fraud (Count III)

XL Group challenges Foster Consulting's fraud claim on two fronts.  First, it argues that the economic loss rule bars recovery in tort for economic losses suffered as a result of a breach of contract.  (Def.'s Mem. at 22-23.)  Alone, this argument fails, because it neglects the *possibility* that one may commit fraud through "a present intention not to perform" a contract.  *Patrick v. Summers*, 369 S.E.2d 162, 164 (Va. 1988) (citing *Lloyd v. Smith*, 142 S.E. 363 (Va. 1928)).  As Foster Consulting correctly notes, Virginia recognizes the *possibility* that one can allege both fraud and breach of contract.[12]  *Id.*; (Pl.'s Opp'n at 13.)  Nevertheless, Foster Consulting fails to allege sufficient allegations that XL Group intended to mislead it when the parties executed the Agreement.  In this respect, XL Group is correct that the Second Amended Complaint is deficient, and so Count III should be dismissed.

To state a claim for fraud, Foster Consulting must allege: (1) a false representation; (2) of a material fact; (3) made intentionally and knowingly; (4) with intent to mislead; (5) reliance; and, (6) damage as a result.  *State Farm Mut. Auto. Ins. Co. v. Remley*, 618 S.E.2d 316, 321 (Va. 2005) (citations omitted).  Federal Rule of Civil Procedure 9(b) subjects fraud claims to a heightened pleading standard.  Specifically, a party alleging fraud must "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Such "circumstances" must include "the time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what he obtained thereby."  *United States ex rel.*

---

[12] Although Pennsylvania law governs interpretation of the Agreement, Virginia law applies to the tort of fraud, because any injuries were suffered by Foster Consulting in Virginia.  *See Dreher*, 634 S.E.2d at 327.

*Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (internal citations omitted). However, Rule 9(b) also explicitly excuses a party from pleading fraudulent intent under the elevated standard. Rule 9 does not give a plaintiff "license to evade the less rigid — though still operative — strictures of Rule 8." *Iqbal*, 556 U.S. at 686-87. Thus, allegations of intent must nevertheless satisfy the basic Rule 8 standards, such that facts alleged allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

The Fourth Circuit has recently explained the requirements of pleading knowledge of untrue statements. In *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369 (4th Cir. March 26, 2012), the Court held that a conclusory allegation that a defendant's "statements were 'known by [them] to be false at the time they were made' . . . is entirely insufficient." *Id.* at 378. Specifically, the Fourth Circuit held that such a statement was nothing more than "a mere recitation of the legal standard" of intent. *Id.* The allegations were held to be "precisely the sort of allegations that *Twombly* and *Iqbal* rejected." *Id.*

Here, the sole allegation of intent is that "XL Group knew at the time that he [*sic*] made these material representations that the representations were false because it never intended to fulfill these representations." (2d Am. Compl. at ¶ 44.) Like the allegations in *Mayfield*, the allegation of knowledge and intent here are entirely conclusory. 674 F.3d at 378. Accordingly, the Court recommends that XL Group's motion be granted with respect to Foster Group's fraud claim.

4.    **Breach of Fiduciary Duty (Count IV)**

Foster Consulting's breach of fiduciary duty claim against XL Group is entirely conclusory. As an alleged tort causing injury in Virginia, the analysis is guided by Virginia's substantive law governing fiduciary duties. *See Dreher*, 634 S.E.2d at 327. Under Virginia law, Foster Consulting must allege facts plausibly showing that XL Group failed to exercise "good faith" in pursuit of the joint venture. *Dexter v. Houston*, 20 F.2d 647, 651-52 (4th Cir. 1927). To state a claim for breach of fiduciary duty, there must be at least some allegations of fact giving rise to a plausible inference that XL Group exercised bad faith. *Iqbal*, 556 U.S. at 678.

Here, the Second Amended Complaint states in only conclusory fashion that "XL Group violated its fiduciary duty of good faith and loyalty in the manner described [therein]." (2d Am. Compl. at ¶ 50.) Such allegations are nothing more than a "formulaic recitation of the elements" of a breach of fiduciary duty and are thus insufficient under *Twombly*. 550 U.S. at 555 (citations omitted). The Second Amended Complaint does not contain a single allegation of fact from which one might reasonably infer an exercise of bad faith. In essence, Foster Consulting seeks to transform its breach of contract claim into one for the tort of breach of a fiduciary duty. To assert the tort, there must be a showing of a breach of a duty existing at common law, not simply the breach of a duty existing by virtue of the parties' contract with one another. *See Richmond Metropolitan Auth. v. McDevitt Street Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998) (explaining the source of duty rule). Without alleging facts from which bad faith may be inferred, no such breach is pleaded. For this reason, the Court recommends that XL Group's motion be granted with respect to Count IV.

21

**B.     XL Group's Counterclaim for Declaratory Judgment (Count II)**

Foster Consulting challenges the sufficiency of Count II of XL Group's Amended

Counterclaim, which seeks a declaration that it owns the copyright in the ClaritySM Software.

(Am. Countercl. at ¶¶ 41-52.)  Contrary to Foster Consulting's arguments, XL Group has

sufficiently alleged that it obtained a copyright in the ClaritySM Software as a work-for-hire.

Foster Consulting's argument that XL Group's "work-for-hire" claim is raised "for the

first time" in the briefs is completely unfounded.  (Pl.'s Reply to Def.'s Opp'n to Mot. to

Dismiss ("Pl.'s Reply") at 2.)  Paragraph 42 of the Amended Counterclaim specifically states

that "XL Group's employees developed the [ClaritySM] Software within the scope of their

employment with XL Group."  Alone, such an allegation would be insufficient, since it merely

lists the basic elements of a work-for-hire.  *Twombly*, 550 U.S. at 555 (citations omitted)

(rejecting a "formulaic recitation of the elements of a cause of action"); *Avtec Sys.*, 21 F.3d at

571 (citation omitted) (setting forth the elements of a work-for-hire).  But XL Group also alleges

that its business exists to provide "data management," much like the ClaritySM Software that its

employees "developed . . . to assist in the tracking and distribution of pharmaceutical samples."

(Am. Countercl. at ¶¶ 7, 18.)  These more specific factual allegations, if proven, state a claim that

XL Group is the author of the ClaritySM Software under the work-for-hire doctrine.

Significantly, Foster Consulting "does not dispute that *as between XL Group and its*

*employees*, XL Group, and not its individual employees, has ownership rights in the software."

(Pl.'s Reply at 2.)  Rather, Foster Consulting argues that this is somehow insufficient given XL

Group's inclusion of costs for the creation of the ClaritySM Software on the joint venture's

balance sheet.  (*Id.* at 2-3.)  The inclusion of such an expense on the balance sheet — whether

intentional or not — has no bearing on the nature of Foster Consulting's contributions as an author under the Copyright Act. *See* note 7, *supra*.

Moreover, it does not matter that Foster Consulting alleges a different, albeit insufficient theory of copyright ownership. Foster Consulting's own allegations have no bearing on the sufficiency of those in the Amended Counterclaim. Accordingly, the Court recommends that Foster Consulting's motion for judgment on the pleadings as to Count II of the Amended Counterclaim be denied.

## IV. CONCLUSION

In conclusion, and for the reasons discussed herein, it is the recommendation of this Court that the Defendant's Motion to Dismiss (construed as a motion for judgment on the pleadings) (ECF No. 47) be GRANTED, in part, and DENIED, in part. Specifically, the Court recommends that the motion be DENIED with respect to Counts I and II, but GRANTED with respect to Counts III and IV. The Court also recommends that the Plaintiff's Motion to Dismiss (construed as a motion for judgment on the pleadings) (ECF No. 52) be DENIED.

Let the Clerk file this Report and Recommendation electronically and forward a copy to the Honorable Robert E. Payne with notification to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure**

shall bar you from attacking on appeal the findings and conclusions accepted and adopted

by the District Judge except upon grounds of plain error.

_____ /s/

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Dated: June 1, 2012

24